UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
In re:

THE GREAT ATLANTIC & PACIFIC TEA COMPANY,
INC., *et al.*,                                              **OPINION AND ORDER**

                                        Debtors.
-----------------------------------------------------------------------x
KATERENE HALKIAS,

                                        Appellant,         Case No. 19-CV-8441 (CS)

            - against -

THE GREAT ATLANTIC & PACIFIC TEA COMPANY,
INC., and NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA,

                                        Appellees.

-----------------------------------------------------------------------x

<u>Appearances</u>:

Thomas J. Romans
Law Offices of Thomas J. Romans
Wyckoff, New Jersey
*Counsel for Appellant*

Susan N.K. Gummow
Igor Shleypak
Foran Glennon Palandech Ponzi & Rudloff P.C.
Chicago, Illinois
*Counsel for Appellees National Union*
    *Fire Insurance Company of Pittsburgh, PA*

<u>Seibel, J.</u>

        Before the Court are the motion to dismiss of National Union Fire Insurance Company of

Pittsburgh, PA ("Appellee" or "National Union"), (Doc. 7), and the appeal of Katerene Halkias

("Appellant") from the Bankruptcy Court's Order Denying Motion of Katerene Halkias for

Relief from the Automatic Stay, (Bankr. Doc. 4424 ("Order")).[1]

## I.    BACKGROUND

The following facts are taken from the record generated in the bankruptcy case.  Appellee

The Great Atlantic & Pacific Tea Company, Inc., ("A&P" or "Debtor") is a debtor in a Chapter

11 case before Judge Robert D. Drain of the United States Bankruptcy Court for the Southern

District of New York,[2] and National Union is A&P's insurer.  The Bankruptcy Court established

a process for granting relief from the automatic stay under 11 U.S.C. § 362(a) to enable the

liquidation of personal injury claims against A&P in other courts.  (*See* Bankr. Doc. 1565

("Procedures Order").)  That process involves four steps:

> (1) inquiry by the claimant and review by the Debtors, (2) execution of a
> stipulation and order by the claimant and the Debtors, (3) the Debtors' provision
> of notice thereof to certain "Reviewing Parties," and (4) if no objections are made
> within seven days of such notice, the automatic grant of relief from the automatic
> stay as provided in the relevant stipulation and order; that is, the stipulation and
> order lifting the automatic stay are deemed "so ordered" by the Court.

(Bankr. Doc. 4419 ("Mem. of Decision") at 3 (footnote omitted) (citing Procedures Order at 3-4

¶¶ a-c).)

On or about November 10, 2015, Appellant submitted an inquiry under step (1) in an

effort to recover for an injury that she allegedly suffered on October 31, 2014.  (*Id.* at 3-4; *see*

Doc. 15 ("Appellant's Br.") at 4.)  The statute of limitations to bring that action in state court in

New Jersey is two years, (N.J. Stat. Ann. § 2A:14-2), so ordinarily the case would have had to be

---

[1] "Bankr. Doc." refers to documents filed in the U.S. Bankruptcy Court for the Southern District of New York under docket number 15-23007.  "Doc." refers to a document filed in this Court under Case No. 19-CV-8441.

[2] A complete list of Debtors in the Chapter 11 cases jointly administered under docket number 15-23007 is available in Bankr. Doc. 4419 at 1 n.1.

brought by November 1, 2016.  But on July 19, 2015, A&P filed for bankruptcy.  (Bankr. Doc. 1.)  Under bankruptcy law, a statute of limitations is extended to "30 days after notice of the termination or expiration of the [automatic] stay . . . with respect to such claim."  11 U.S.C. § 108(c)(2).

On January 22, 2018, Appellant executed a stipulation, agreement, and order under step (2) (the "Agreed Order"), and on February 13, 2018, the Debtors served the stipulation notice required by step (3) and the Agreed Order on the "Reviewing Parties," a term defined to include the U.S. Trustee, counsel for the official creditors' committee, the applicable insurer, and any other relevant parties.  (Mem. of Decision at 3-4 & n.3; *see* Bankr. Docs. 4000, 4003; Procedure Order at 4 ¶ b.)  Appellant at least arguably was entitled to notice under the Bankruptcy Court's case management order, (Bankr. Doc. 62), which provides that "any person or entity with a particularized interest in the subject matter of a certain Document" be served with it by U.S. mail, (*id.* ¶ 2.xv), and Appellee does not seriously dispute that Appellant was so entitled.

The Affidavit of Service by Debtor's process server Prime Clerk lists the stipulation notice as having been sent by first class mail to Appellant and her counsel, as well as by email to counsel.  (Mem. of Decision at 4.)  After no objections to the notice were made within seven days – that is, by February 20, 2018 – Appellant's requested relief from the stay was automatically granted.  (Mem. of Decision at 4.)  Accordingly, as Appellant concedes, any state court action would have to have been filed by March 22, 2018.  (Appellant's Br. at 8-9.)  Appellant's counsel (although not Appellant) claims that he did not receive the stipulation notice, and despite having signed the stipulation on January 22, he apparently did not undertake any inquiry until some time after March 22.  (*Id.* at 8 (counsel followed up by calling Debtors' counsel but "by that time, it was too late to timely file a state court action"); *see* App. at 41

(counsel's affidavit stating that his "best recollection" is that he "was notified in early April 2018 that the Stipulation had been filed and was effective" when he "follow[ed] up by telephone with Debtor's counsel to learn if the Stipulation was filed" and counsel told him it was effective).)[3]

On April 16, 2018, Appellant filed an action against A&P in New Jersey state court (the "State Court Action").  *See Halkias v. Great Atl. & Pac. Tea Co.*, No. BER-L-2733-18 (N.J. Super. Ct.).  A&P moved to dismiss the case on the ground that it was time barred and Appellant – apparently recognizing the problem – filed her own motion to dismiss, seeking to go back to the Bankruptcy Court for a ruling that the automatic stay had not been lifted because of insufficient notice.  (Appellant's Br. at 7; *see* Mem. of Decision at 5.)  The state court granted the latter motion on March 22, 2019, ordering that Appellant

> may within thirty (30) days following the date of this Order proceed before the United States Bankruptcy Court in and for the Southern District of New York in the Chapter 11 Case of the Great Atlantic & Pacific Tea Company, Inc., et al. (Case No. 15-23007) for declaratory relief as to whether or not the automatic stay had been heretofore effectively lifted with respect to Plaintiff's personal injury claims and, if not heretofore effectively lifted, to obtain an order lifting the stay as to allow Plaintiff to re-file her Complaint against Defendant as may be allowed by Order of the United States Bankruptcy Court and the United States Bankruptcy Code.

(Mem. of Decision at 5 (emphasis omitted).)

On April 8, 2019, Appellant filed in the Bankruptcy Court a motion seeking (1) a determination that the stay was not lifted on February 20, 2018, because Appellant's counsel did not receive the stipulation notice, or (2) a new order lifting the automatic stay.  (Bankr. Doc. 4325.)  Appellant, A&P, and National Union submitted briefs and supporting affidavits, (Bankr. Docs. 4325, 4378-4379, 4397), and the Bankruptcy Court held a hearing on July 16, 2019 (the

---

[3] "App." refers to Appellant's Appendix, (Doc. 15-1).

"Hearing"), (Mem. of Decision at 2).[4]  On the basis of the briefs, the affidavits, and the record of

the Hearing, the Bankruptcy Court found that Appellant herself received actual notice of the

automatic stay's termination at least thirty days before she commenced the State Court Action,

concluded that her claim was therefore time barred under 11 U.S.C. § 108(c)(2), and found no

basis to alter that result.  (Mem. of Decision at 2; Order at 1-2.)  Appellant timely filed a Notice

of Appeal.  (Bankr. Doc. 4427.)

On September 11, 2019, Appellant's Notice of Appeal was transmitted to this Court.

(Doc. 1).  On September 19, 2019, Appellant filed her designation of the record.  (Doc. 3.)  On

October 9, 2019, the Clerk of Court noticed the availability of the record on appeal, and in

accordance with Federal Rule of Bankruptcy Procedure 8018(a)(1), set November 8, 2019, as the

due date for Appellant's brief.  (Doc. 4.)  Thereafter, National Union requested to be docketed as

an Appellee and, having received no opposition, I granted that application.  (Doc. 5.)

On December 9, 2019, National Union filed a motion to dismiss on the ground that

Appellant failed to timely file her brief.  (Doc. 7.)  Appellant opposed that motion and cross-

moved for an extension of time on December 16, (Doc. 14), and thereafter filed her opening brief

on January 7, 2020, (Appellant's Br.).  National Union opposed, (Doc. 16 ("Nat'l Union Br.")),

and Appellant replied, (Doc. 20 ("Appellant's Reply")).

## II.   <u>STANDARD OF REVIEW</u>

Under 28 U.S.C. § 158(a), "[t]he district courts of the United States shall have

jurisdiction to hear appeals . . . from final judgments, orders, and decrees . . . of bankruptcy

judges."  A district court reviews the bankruptcy court's conclusions of law *de novo* and its

findings of fact for clear error.  *In re Bennett Funding Grp.*, 146 F.3d 136, 138 (2d Cir. 1998).

---

[4] The transcript of the Hearing is available at App. at 18-31 ("Hr'g Tr.").

"Mixed questions of fact and law are subject to *de novo* review." *Babitt v. Vebeliunas* (*In re Vebeliunas*), 332 F.3d 85, 90 (2d Cir. 2003); *see Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.* (*In re Parmalat*), 639 F.3d 572, 580 (2d Cir. 2011). "The decision to grant or deny relief from the automatic stay is reviewed for abuse of discretion." *Holt v. JP Morgan Chase Bank, N.A.*, No. 17-CV-07901, 2019 WL 192298, at *1 (S.D.N.Y. Jan. 15, 2019) (internal quotation marks and alteration omitted), *appeal filed*, No. 19-691 (2d Cir. Mar. 21, 2019).

## III.   DISCUSSION

### A.   National Union's Motion to Dismiss

National Union moves to dismiss the appeal on the ground that Appellant failed to timely file her brief. Federal Rule of Bankruptcy Procedure 8018(a)(4) provides that "[i]f an appellant fails to file a brief on time or within an extended time authorized by the district court . . . , an appellee may move to dismiss the appeal . . . ." A court need not automatically dismiss the appeal of a party who has not complied; it should determine whether dismissal is appropriate under the circumstances. *Balaber-Strauss v. Reichard* (*In re Tampa Chain Co.*), 835 F.2d 54, 55 (2d Cir. 1987) (*per curiam*). "Generally, a dismissal is warranted when an appellant failed to comply because of bad faith, negligence or dilatoriness." *Fletcher v. Davis* (*In re Fletcher Int'l, Ltd.*), 536 B.R. 551, 558 (S.D.N.Y. 2015) (internal quotation marks and alterations omitted), *aff'd*, 661 F. App'x 124 (2d Cir. 2016) (summary order). In evaluating whether neglect is excusable, courts consider "all relevant circumstances surrounding the party's omission," including "the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, . . . and whether the movant acted in good faith." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993). "[T]he *Pioneer* factors are not given equal weight, and courts focus on the third factor: the

reason for the delay, including whether it was within the reasonable control of the movant."
*S&R Dev. Estates LLC v. Town of Greenburgh*, No. 16-CV-8043, 2017 WL 44854, at *2
(S.D.N.Y. Jan. 4, 2017) (internal quotation marks, citation, and alteration omitted); *see Williams
v. KFC Nat'l Mgmt. Co.*, 391 F.3d 411, 415-16 (2d Cir. 2004) (reason for delay is most
important factor, and "the other three are significant only in close cases").  The burden of
proving excusable neglect is on the party seeking the extension, *Midland Cogeneration Venture
Ltd. P'ship v. Enron Corp.* (*In re Enron Corp.*), 419 F.3d 115, 121 (2d Cir. 2005), and the
Second Circuit takes a "'hard line'" on such applications, *id.* at 122 (quoting *Silivanch v.
Celebrity Cruises, Inc.*, 333 F.3d 355, 368 (2d Cir. 2003)), such that a party that fails to follow a
clear rule will ordinarily lose under the *Pioneer* test, *id.* at 123.

     As to the first factor, National Union has been forced to act to move this case along, so it
has suffered some prejudice, but I do not afford it much weight because the only action it was
forced to take was filing the motion to dismiss.  *See McKenna v. U.S. Tr.*, 177 B.R. 755, 758
(D.R.I. 1994) (being forced to act repeatedly can be prejudicial).  As to the second factor, the
length of the delay – sixty days – means that Appellant had three times as long as the Federal
Rules of Bankruptcy Procedure provide to file her brief while this case lingered on the Court's
docket.  Accordingly, this factor weighs in favor of National Union, but again not heavily.

     With respect to the third factor, Appellant offers two excuses for the missed deadline
through declarations of counsel Thomas J. Romans, (Doc. 14-1), and counsel's paralegal Diana I.
Ortiz, (Doc. 14-2), and a memorandum of law that is just over one page long, (Doc. 14-3).
Essentially, Romans encountered health problems during 2019 and had lower-back surgery on
September 7.  (Doc. 14-1 ¶ 4.)  Ortiz filed the notice of appeal on or about September 9 (it was
docketed on September 11) and completed the designation of the record on appeal on September

19.  (Doc. 14-2 ¶ 3; *see* Docs. 1, 3.)  "Soon after," between late September and the end of October 2019, Ortiz faced family problems requiring her to "cut back considerably with [her] time at [her] job," (Doc. 14-2 ¶¶ 4-5), and Romans hired "temporary secretaries[] who were unable to assume [Ortiz's] duties with completing this appeal," (Doc. 14-1 ¶ 5).  Ortiz attests that "the deadline for the filing of the Brief . . . was not diaried and due to [her] family situation, [she] was unable to keep abreast of the status of the appeal."  (Doc. 14-2 ¶ 6.)  Romans returned to work full time in early November and claims to have "focused on getting a brief filed, albeit late," rather than making "an application to extend time to file a brief," until the motion to dismiss "intervened."  (Doc. 14-1 ¶ 4.)  Appellant filed her brief on January 7, 2020, which was sixty days after the due date, twenty-nine days after National Union filed its motion to dismiss, and twenty-two days after she filed her opposition to that motion to dismiss.

Appellant's explanation for the delay does not constitute excusable neglect.  While the Court is sympathetic that Romans and Ortiz both faced challenging personal circumstances, Appellant fails to explain why Roman neglected to inform this Court, where he had a matter pending, of his medical issues when he encountered them; why Romans failed to hire temporary secretaries able to complete basic docket monitoring and extension request functions; why instructions were not left for the temporary replacements to look out for the notice of record availability and diary the brief deadline; why Romans, upon returning to work full time in early November, failed to request an extension; whether Romans was indeed aware of the deadline and chose to ignore it (per his declaration) or whether it was not diaried (per Ortiz's declaration); and why Romans let twenty-nine days pass before filing the brief after National Union's motion apparently roused him.  Although Romans and Ortiz seem to have had little or no control over

their personal circumstances, it was easily within Romans's ability to request an extension.[5]
Further, "[f]ailing to calendar the deadline for filing an answer is the type of law office error that
rarely constitutes an excusable neglect."  *S&R Dev. Estates LLC*, 2017 WL 44854, at *3 (internal
quotation marks omitted).  And to the extent Ortiz attempts to shoulder the blame herself,
Romans's "[f]ailure to properly supervise staff assigned to handle a filing is not excusable
neglect."  *Id.*

As to the fourth factor, while there are no facts suggesting intentional or bad faith
conduct on counsel's part in failing to timely file Appellant's Brief – except perhaps his
assumption that he need not seek permission for a late filing and could prepare his brief at his
leisure – his error here appears to be part of a larger pattern of dilatory conduct.  As described
further below, counsel has whiffed more than once in connection with Appellant's case and it
seems he has inexcusably affected her rights.  Romans failed to follow the dictates of Federal
Rule of Bankruptcy Procedure 8018(a)(1), which creates a deadline that was also flagged by the
Clerk of Court, and item 1.E of my individual practices, which sets out the process for requesting
an extension of time and provides that "[a]bsent extraordinary circumstances," which Romans
has not shown, "requests for extensions will be denied if not made promptly and before the
expiration of the original deadline."  *See Canfield v. Van Atta Buick/GMC Truck, Inc.*, 127 F.3d
248, 250 (2d Cir. 1997).  For these reasons, Appellant has not shown excusable neglect, and thus
National Union's motion to dismiss is granted and Appellant's cross-motion for extension of
time is denied as untimely and moot.

_____

[5] According to Romans, his surgery on September 7, 2019, was not unplanned, and he
returned to work full time in early November.  (Doc. 14-1 ¶ 4.)  He had every opportunity –
either in anticipation of the surgery, while recovering, or after his return to work – to seek an
extension of time to file.

**B.**   **Order Denying Relief from the Automatic Stay**

Even if the Court were to deny National Union's motion to dismiss, the appeal would fail

on the merits.  Appellant advances three main arguments in support of the appeal:  that the

Bankruptcy Court erred by not holding an evidentiary hearing, in its application of the relevant

law, and by failing to consider and grant Appellant's request for equitable relief.  (Appellant's

Br. at 10-11.)

Appellant argues that the Bankruptcy Court erred in failing to conduct an evidentiary

hearing with respect to whether Prime Clerk properly effectuated service of the stipulation

notice.[6]  "Bankruptcy courts have the discretion to decide an issue without holding an

evidentiary hearing, and a district court can reverse such a decision only if it amounts to an abuse

of discretion."  *Gordon v. Tese-Milner* (*In re Gordon*), 577 B.R. 38, 49 (S.D.N.Y. 2017).  "A

---

[6] The Bankruptcy Court determined that Appellant received the stipulation notice because she conceded that she actually received it.  Apparently Romans had not taken steps to ensure that Appellant would forward legal notices to him, which is surprising because he contends that English is not her first language and she would not understand notices mailed to her.  (Mem. of Decision at 10.)  Nor was Romans periodically checking the docket, which is also surprising because he requested that the stay be lifted in the first instance and he had not entered a notice of appearance.  (*Id.*)  As the Bankruptcy Court explained, it was not Debtors' obligation to provide notice in a language other than English absent facts showing that such notice would be reasonable – even here Romans does not suggest that his client does not understand English – and Appellant's inability to understand court documents sent to her does not defeat actual notice.  (*Id.* (citing *In re Peralta*, 599 B.R. 759, 764 (Bankr. D.N.J. 2019).)  Here, Appellant does not argue that her actual receipt was insufficient under 11 U.S.C. § 108(c)(2), but rather urges that her counsel did not receive the notice.  But it is not at all clear that service on Romans, who had not entered a notice of appearance, was required under the circumstances because "(a) any ethical obligation [of Debtors] to provide such notice was satisfied by the notices sent to Mr. Romans, (b) there was no motion initiating a contested matter that led to the Agreed Order and therefore arguably Fed. R. Bankr. P. 9014(b) [incorporating Federal Rule of Civil Procedures 5(b), which requires service on attorneys of represented parties] did not apply, and (c) section 108(c)(2) refers to 'notice' not 'service.'"  (Mem. of Decision at 11.)  Appellant has put forth no reason for me to disturb the Bankruptcy Court's finding that service on Appellant herself was sufficient under 11 U.S.C. § 108(c)(2), so I need not reach Appellant's arguments as to service on Romans, but I address them in an excess of caution.

bankruptcy court does not abuse its discretion in reaching a decision without holding an evidentiary hearing where 'the record provided ample evidence on which the court could make such a decision.'" *Id.* (quoting *C-TC 9th Ave. P'ship v. Norton Co.* (*In re C-TC 9th Ave. P'ship*), 113 F.3d 1304, 1313 (2d Cir. 1997)).

Appellant concedes that "[t]here is no statute or rule requiring an evidentiary hearing on a motion of this nature, and none was requested." (Appellant's Br. at 17.)  Indeed, "motions may be decided wholly on the papers, and usually are." *In re Blaise*, 219 B.R. 946, 949 (B.A.P. 2d Cir. 1998) (internal quotation marks omitted).[7]  Now, Appellant argues that an evidentiary hearing was "necessary in the present case to do justice," (Appellant's Br. at 17), by affording her the opportunity to "hear first hand from Prime Clerk about the procedures it followed in effecting service," (*id.* at 12).  But the lack of an evidentiary hearing does not constitute a ground for error where, as here, an evidentiary hearing is not required and the appealing party did not request one.  *See Froman v. Fein* (*In re Froman*), 566 B.R. 641, 651 (S.D.N.Y. 2017) (lack of evidentiary hearing not error where party had opportunity to contest conversion motion but never requested separate evidentiary hearing); *Wilmington Tr. Co. v. AMR Corp.* (*In re AMR Corp.*), 490 B.R. 470, 479 (S.D.N.Y. 2013) ("[W]here the parties do not request an evidentiary hearing or the core facts are not disputed, the bankruptcy court is authorized to determine contested matters on the pleadings and arguments of the parties, drawing necessary inferences from the record.") (alteration and internal quotation marks omitted); *Powers v. Am. Honda Fin. Corp.*, 216 B.R. 95, 97 (N.D.N.Y. 1997) (evidentiary hearing on lift-stay motion not required where party did not request one, and where party had opportunity to contest at oral argument).

---

[7] Even though no hearing was required, the Bankruptcy Court held one on July 16, 2019, which afforded Appellant the opportunity to raise additional points.  (*See* Hr'g Tr.)

Further, there was no need to hear from Prime Clerk about its procedures because –
contrary to Appellant's claim here that evidence about those procedures was needed "to more
fully explor[e] the concerns raised by counsel," (Appellant's Br. at 12) – Appellant did not raise
concerns in the Bankruptcy Court about the service or otherwise challenge the veracity of Prime
Clerk's Affidavit of Service.  To the contrary, counsel stated that he had no basis on which to do
so and was arguing that the notice had not been received, not that it had not been sent.  (App. at
41.)  It is thus hard to see how or why Judge Drain would have, on his own motion, convened a
pointless evidentiary hearing to address undisputed facts regarding Prime Clerk's service of the
notice.  Appellant had the opportunity to scrutinize and challenge Prime Clerk's Affidavit of
Service through briefing or at the Hearing, but chose to advance other arguments.  (*See* Hr'g Tr.
at 27:14-16 (Appellant's counsel arguing that affidavits from counsel, counsel's paralegal, and
other postal service customers who experienced problems "sufficiently rebut[] the presumption"
of service).)  Having chosen not to dispute the veracity of the affidavit and instead rely on other
approaches, Appellant cannot now fault the Bankruptcy Court for not offering the opportunity to

examine the process server.[8]  Thus, the Bankruptcy Court did not abuse its discretion in failing to hold an evidentiary hearing.[9]

Appellant also argues that the Bankruptcy Court erred in finding Appellant's evidence insufficient to rebut the presumption of service.  It is well settled that "proof that a letter properly directed was placed in a post office creates a presumption that it reached its destination in usual time and was actually received by the person to whom it was addressed." *Hagner v. United States*, 285 U.S. 427, 430 (1932).  "To invoke the presumption, a party must prove that the letter was properly addressed, stamped, and mailed."  *In re Greenberg*, 526 B.R. 101, 105 (Bankr. E.D.N.Y. 2015) (collecting cases).  "Courts have routinely held that an affidavit of service is sufficient evidentiary material to raise the presumption of receipt after proper mailing." *Surabian v. Picard* (*In re Bernard L. Madoff Inv. Sec. LLC*), No. 13-CV-4332, 2014 WL 1302660, at *4 (S.D.N.Y. Mar. 31, 2014) (internal quotation marks and alteration omitted). "This presumption of receipt is very strong and can only be rebutted by specific facts and not by

---

[8] Further, because this issue of testimony from the process server was not raised below, it is not properly before this Court on appeal.  *See Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 114 (2d Cir. 2005); *In re REA Holding Corp.*, 2 B.R. 733, 737 (S.D.N.Y. 1980).  Appellant urges that "[w]here 'the proper resolution is beyond any doubt' or where 'injustice might otherwise result[,'] the appellate forum may consider issues not passed on below."  (Appellant's Reply at 3 (quoting *Singleton v. Wulff*, 428 U.S. 106, 121 (1976)).)  But Appellant merely speculates as to what might have been revealed upon cross-examination of Prime Clerk's affiant:  perhaps the envelope was returned to sender because it included Appellant's name as well as counsel's, (*see* Appellant's Br. at 13), or perhaps the affiant did not have personal knowledge of Prime Clerk's mailing (a suggestion that is refuted on the face of the affidavit), (*see* Appellant's Reply at 6). This conjecture, unsupported by facts, falls far short of showing that the Bankruptcy Court's resolution was improper beyond any doubt or that injustice that might otherwise result.

[9] Appellant's vague invocation of "princip[les] of due process," (Appellant's Br. at 23), is without support and is so underdeveloped that the Court deems it waived, *see Poplar Lane Farm LLC v. Fathers of Our Lady of Mercy*, 449 F. App'x 57, 58-59 (2d Cir. 2011) (summary order) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.") (internal quotation marks omitted).

invoking another presumption and not by a mere affidavit to the contrary.  Evidence of an objective nature going beyond the claimant's statement of non-receipt is necessary."  *In re Greenberg*, 526 B.R. at 105 (internal quotation marks and alteration omitted).  "[T]o rebut the presumption of receipt, a party must allege more than mere denials of receipt of notice, and allege insufficient notice in combination with evidence of standardized procedures for processing mail."  *Gilbert v. N. Am. Airlines*, No. 12-CV-523, 2014 WL 1271057, at *8 (E.D.N.Y. Mar. 26, 2014) (internal quotation marks omitted).  "No court has held that multiple denials of receipt are sufficient to rebut the presumption of receipt."  *In re Greenberg*, 526 B.R. at 110.

Appellant's contention that "the Bankruptcy Court based its decision entirely upon the Affidavit of Service and disregarded Appellant's evidence" is without merit.  (*See* Appellant's Br. at 17.)  The Bankruptcy Court's Memorandum of Decision shows that Judge Drain carefully scrutinized the "substantial record" generated on the motion, including the affidavits submitted by Appellant and Debtors and documents entitled to judicial notice.  (Mem. of Decision at 2.) The Bankruptcy Court rigorously examined the affidavits provided by Appellant for "specific facts" supporting her contention that Romans did not receive notice.  (*Id.* at 13.)  Romans submitted five affidavits that referred to "general problems with mail delivery at Mr. Romans'[s] office, 681 Lawlins Road, Wyckoff, NJ 07481."  (*Id.* at 7.)[10]  But the Bankruptcy Court properly determined that that information was irrelevant because the stipulation notice was mailed to Mr. Romans's firm's post office box, not his office.  (*Id.*)  Where the affidavits discussed problems with mail delivery to post office boxes, they included "general" allegations lacking "any specific

---

[10] Appellant provided a sixth affidavit related to email service, which is not pertinent to the issue on appeal.

instances of mis-delivery or non-delivery or the relevant circumstances, such as when it occurred and how the piece of mail was addressed." (*Id.* at 8.)

The Bankruptcy Court also carefully scrutinized Romans's own mail procedures (such as they are), which involve Romans or Ortiz picking up the mail at the post office, and Ortiz delivering "court notices, court documents and correspondence from attorneys" to Romans. (*Id.*) The Bankruptcy Court correctly determined that Ortiz's affidavit "contains the kinds of gaps that render declarations regarding office procedures insufficient," (*id.* at 14), and identified similar problems with Romans's, (*id.* at 15), because neither was the only one to pick up mail from the post office, there is no indication of what happens to mail after it is provided to Romans for review, and there is no evidence of any "tracking, or log-in system that has rebutted the presumption of receipt in other cases when more than one person handles office mail," (*id.*). It therefore concluded that Appellant had not put forth sufficient evidence to rebut the presumption of delivery created by the Affidavit of Service.

I agree. Romans's mail procedures are not only not standardized, *see Gilbert*, 2014 WL 1271057, at *8, but they are sufficiently casual that it is not surprising that something slipped through the cracks. The other affidavits attest only generally to problems with mail service, and do not contain sufficient "specific facts" to rebut the presumption of delivery created by the Affidavit of Service. *See In re Greenberg*, 526 B.R. at 105; *see also Manigault v. Macy's E., LLC*, 318 F. App'x 6, 7 (2d Cir. 2009) (summary order) ("The evidence offered by Manigault, consisting of her own denial of receipt of the mailing as well as similar denials by two other employees of Macy's, is insufficient to rebut the presumption that she received the mailing."). And the opinion upon which Appellant chiefly relies, *Engel v. Lichterman*, 467 N.Y.S.2d 642, 648 (App. Div. 1983) (Gibbons, J., concurring in part and dissenting in part), is not only a

15

dissenting view, but – in opining that denial of receipt creates a fact dispute requiring a hearing – conflicts with this Circuit's binding precedent.  The Bankruptcy Court applied the correct standard, none of Judge Drain's factual findings are clearly erroneous, and accordingly, the Bankruptcy Court's judgment – were I to reach the merits of this appeal – would be affirmed.

Appellant finally argues that the Bankruptcy Court "should have considered Appellant's requests for equitable relief."  (Appellant's Br. at 33.)  The Bankruptcy Court did consider those requests; it simply did not find in favor of Appellant.  (See Mem. of Decision at 15.)  Appellant argues that 11 U.S.C. § 108(c) is subject to equitable tolling, and that therefore the Bankruptcy Court had the power to grant relief.  (*Id.* at 32-33.)  But even if § 108(c) is subject to equitable tolling, the case that Appellant cites in support of its argument holds that "'equitable tolling' is appropriate when the plaintiff has diligently pursued his remedy but some action by defendant has frustrated his efforts."  *In re Aguilar*, 470 B.R. 606, 615 (Bankr. D.N.M. 2012), *appeal dismissed*, No. 12-CV-348, 2013 WL 12328885 (Sept. 3, 2013).  As the Bankruptcy Court correctly found, "the Debtors have done nothing to mislead the Movant as to the statutory deadline."  (Mem. of Decision at 15.)  And counsel was hardly diligent in doing nothing for months, after signing the stipulation, to ascertain the status of the matter.  Further, Appellant has not shown that the Bankruptcy Court had any basis or jurisdiction to effectively extend a state statute of limitations (particularly because doing so would exceed the parameters of the relief granted by the state court).  Thus, the Bankruptcy Court properly considered, and rejected, Appellant's request for equitable relief.

For these reasons, the judgment of the Bankruptcy Court would be affirmed in all respects.

\*       \*       \*

After the litigation stay was lifted and Appellant had the opportunity to bring her personal injury lawsuit in state court, Mr. Romans blew the deadline imposed by 11 U.S.C. § 108. After the State Court Action was dismissed and he was back before the Bankruptcy Court, Romans blamed his client, his office building, and the U.S. Postal Service.[11] On appeal here, having failed to request an evidentiary hearing or challenge Prime Clerk's Affidavit of Service, Romans blames the Bankruptcy Court for not raising those issues *sua sponte*. Having missed the deadline for Appellant's brief by months, Romans blames his health problems and his paralegal's family problems – which, while unfortunate, do not explain the failures of diligence in how this case was litigated. The attempts at blame-shifting do not obscure the reality that Mr. Romans's blunders have apparently extinguished Ms. Halkias's ability to prosecute her claim, and she is left with $60,000 in unpaid medical bills and no compensation for pain and suffering. Accordingly, Mr. Romans is directed to send to Ms. Halkias a copy of this Opinion and Order and ensure that she understands its contents.[12]

---

[11] Prime Clerk also emailed the stipulation notice to Romans, but the Bankruptcy Court did not consider whether the email notice constituted notice for purposes of § 108(c)(2), (Mem. of Decision at 11 n.6), and the issue is not before this Court. But Mr. Romans claims never to have received that email, blaming his spam filter and Prime Clerk for sending the email to an "A&P Info" service list. (Appellant's Br. at 20.) As Judge Drain noted, counsel using a regular email address might be responsible for checking his spam folder and monitoring the docket. (Mem. of Decision at 11 n.6.) *See Hill v. World Class Auto. Corp.*, No. 06-CV-2496, 2008 WL 4809445, at *4 (E.D.N.Y. Nov. 4, 2008) ("Unsurprisingly, courts have repeatedly rejected the argument that the lack of actual notice due to problems with spam overrides an attorney's obligation to monitor the docket."). Doing so would have been particularly appropriate here, given that counsel had not filed a Notice of Appearance.

[12] Counsel has stated that his client immigrated from Greece and English is her second language. (Appellant's Br. at 15; App. at 43-44.) He has not stated that she does not understand English, but because he has intimated as much, he shall retain a certified interpreter of Appellant's first language to translate this Opinion and Order and provide it to his client.

## IV.    <u>**CONCLUSION**</u>

For the reasons set forth above, National Union's motion to dismiss is GRANTED.  The

Clerk of Court is respectfully directed to terminate the pending motion, (Doc. 7), and close the

case.

**SO ORDERED.**

Dated: July 14, 2020
        White Plains, New York

_____
    CATHY SEIBEL, U.S.D.J.